## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOHN EXLEY, Individually and On Behalf
of All Others Similarly Situated,

                   Plaintiff,

v.

MGT CAPITAL INVESTMENTS, INC.
and ROBERT B. LADD,

                   Defendants.

No. _____

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff John Exley ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, and other publicly available documents, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.        This is a federal securities class action lawsuit brought on behalf of all investors who purchased or otherwise acquired securities of Defendant MGT Capital Investments, Inc. ("MGT" or the "Company") between May 9, 2016 through September 20, 2016, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rules 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.        MGT, until recently a penny stock, operates gaming sites in the mobile and online space, including fantasy sports wagering platforms and casino games.

3.        In early May, 2016, MGT announced that it was acquiring the assets of the tiny internet security app startup D-Vasive, Inc. ("D-Vasive" and the "D-Vasive Acquisition"), whose controlling entity was founded by cyber security pioneer John McAfee ("McAfee"). Under the terms of the D-Vasive Acquisition, MGT will purchase D-Vasive for $300,000 and 23.8 million shares of newly-issued MGT stock. Additionally, upon the closing of the D-Vasive Acquisition, McAfee will become the Executive Chairman and Chief Executive Officer of MGT.

4.        In late May, 2016, MGT announced that it would also acquire Demonsaw LLC ("Demonsaw"), which D-Vasive had acquired after entering into its asset purchase agreement with MGT on May 9, 2016. MGT agreed to issue another 20 million shares of its common stock

to acquire Demonsaw (the "Demonsaw Acquisition", and with the D-Vasive Acquisition, the "Acquisitions"). The Demonsaw Acquisition is to close at the same time, and in conjunction with, the D-Vasive Acquisition.

5.     MGT's stock value surged more than 1,200 percent in the month following the announcements of the Acquisitions, and MGT shareholders were assured that their new visionary McAfee would deliver significant returns once at the helm.

6.     On September 19, 2016, however, MGT announced that it had received a subpoena from the SEC days earlier, requesting certain undisclosed information. MGT's stock plunged $.80, more than 24%.

7.     The next morning, MGT disclosed that the New York Stock Exchange ("NYSE") was refusing to list the newly-issued stock of MGT required to complete the Acquisitions. On this news, MGT shares tumbled an additional $.63, or 25%.

8.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) the risk that its stock to be issued in connection with the Acquisitions may not be listed by the NYSE; and (2) that MGT was under inquiry by the SEC prior to September 19, 2016.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rules 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.     This Court has jurisdiction over the Defendants named herein because Defendants possess sufficient minimum contacts with this District sufficient to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as MGT has its principal executive offices located in this District and conducts substantial business therein.

14.     In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including but not limited to the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff John Exley resides in Jackson, Missouri. Plaintiff acquired and held shares of the Company at artificially inflated prices during the Class Period, as set forth in the accompanying certification, and has been damaged by the revelation of MGT's material misrepresentations and material omissions.

16.     Defendant MGT Capital Investments, Inc. is a Delaware corporation with its principal executive offices located in Harrison, New York. MGT operates gaming sites and,

through its subsidiaries, offers social and real money gaming sites online and in the mobile space, including fantasy sports wagering platforms, casino games and games of skill. MGT's portfolio currently includes social casino and gaming platforms, and ownership stakes in DraftDay.com and DraftDay Fantasy Sports, Inc.

17.     Defendant Robert B. Ladd ("Ladd") is the President, Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and a director of MGT.

18.     In his capacity as both CEO and CFO, Ladd possessed the power and authority to control the contents of MGT's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. Ladd was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of his positions and access to material non-public information available to them, Ladd knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.

## RELEVANT NON-PARTIES

19.     D-Vasive, Inc. purports to design and develop software products. The Company offers anti-spy software for mobiles and personal computers for internal hardware security and application scanning. 50.4% of D-Vasive's common stock is held by Future Tense Secure Systems, Inc., which was founded by John McAfee. John McAfee's wife, Janice Dyson is now the sole director of Future Tense Secure Systems, Inc.

20.     Demonsaw LLC develops and markets secure and anonymous information sharing applications. After the D-Vasive Acquisition was announced, D-Vasive acquired a 100% stake in Demonsaw.

## SUBSTANTIVE ALLEGATIONS

### *Background*

21.    The Class Period begins on May 9, 2016. On that day, MGT issued a press release announcing the D-Vasive Acquisition, entitled "John McAfee Returns to Public Markets as MGT Capital Agrees to Acquire Security/Privacy Technology." The Company filed the same press release on Form 8-K with the SEC. Therein, the Company stated, among other things:

> MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that it has entered into a definitive asset purchase agreement to acquire certain technology and assets from D-Vasive Inc., a provider of leading edge anti-spy software. D-Vasive offers a powerful tool for protection from the proliferation of invasive apps by consumer products companies, social networks, financial institutions and others. These invasive apps can secretly turn on a phone's microphone and camera, as well as monitor geographic movements and access contacts. The D-Vasive technology operates in a unique way, allowing the user to manage and control the device's internal hardware. D-Vasive will be available shortly for Android and Windows platforms, followed by a release for Apple iOS.

> In conjunction with the acquisition, MGT is pleased to announce the proposed appointment of John McAfee as Executive Chairman and Chief Executive Officer. Mr. McAfee, the visionary pioneer of internet security, sold his anti-virus company to Intel for $7.6 billion, and is actively involved in the development of new measures to protect individual freedoms and privacy. Mr. McAfee stated, "The enormous impact of cybersecurity on our lives requires the scale and resources of a public company. Our ability to continue to hire the best minds in the business will be vastly enhanced with a public platform. With the acquisition of D-Vasive technology as a starting point, we expect to grow MGT into a successful and major force in the space." MGT Capital also intends to change its corporate name to John McAfee Global Technologies, Inc.

> Additionally, MGT has entered into a consulting agreement with Future Tense Secure Systems Inc., a technology incubator with investments in other applications requiring privacy, such as file sharing and chat. It is contemplated by the parties that future collaborations or investments may occur going forward.

Closing of the acquisition is contingent on customary conditions including approval by MGT's stockholders. Major terms of the deal include the payment to D-Vasive Inc. stockholders of 23.8 million restricted shares of MGT stock and $300,000 in cash. The proposed share issuance is expected to amount to roughly 47% of the Company on a pro-forma fully diluted basis at closing.

22.     On May 26, 2016, MGT issued a press release announcing the Demonsaw Acquisition. The Company filed the same press release on Form 8-K with the SEC. Therein, the Company, touting MGT's corporate governance and regulatory compliance. The 8-K provided a quote from McAfee assuring MGT shareholders of such compliance: "I want to reiterate my personal commitment towards the creation of a major force in cybersecurity. *As a listed company with proper corporate governance and regulatory standards, MGT will be the vehicle I use to create wealth for all stockholders.*" (emphasis added).

23.     The May 26 Form 8-K also provided that "Major terms of the deal include the payment to Demonsaw LLC members [i.e., D-Vasive] of 20.0 million restricted shares of MGT common stock."

24.     As of August 12, 2016, MGT had 25,857,855 shares of common stock outstanding. The issuance of 43.8 million shares of stock to acquire D-Vasive and Demonsaw would require the listing of more than 166% of additional MGT common stock by the NYSE.

25.     On July 8, 2016, MGT filed its preliminary proxy on Form 14A (the "Preliminary Proxy"), providing a materially inaccurate and incomplete statement regarding the requirements and risks associated with listing new shares on the NYSE:

**Reasons for requesting stockholder approval**

Our Common Stock is currently listed on NYSE MKT, and therefore we are subject to the NYST MKT Company Guide. NYSE MKT Company Guide Section 712 requires stockholder approval as a prerequisite for NYSE MKT approval to list additional shares to be issued as sole or partial consideration for an acquisition of the stock or assets of another company if the present

or potential issuance of common stock, or securities convertible into common stock, could result in an increase in outstanding common shares of 20% or more. We are therefore seeking stockholder approval to issue greater than 20% of our outstanding Common Stock to the D–Vasive Sellers, as required under NYSE MKT Company Guide Section 712.

We seek approval of this Proposal 3 in order to ensure compliance with NYSE MKT Company Guide Section 712 and recommend approval as required by the APA.

26.    On August 8, 2016, the Preliminary Proxy was amended by MGT. Despite amendment, the Preliminary Proxy continued to contain the same incomplete statement regarding the requirements and risks associated with listing new shares on the NYSE as the July 8, 2016 Preliminary Proxy and failed to disclose key risks to investors.

27.    On August 15, 2016, MGT filed with the SEC its definitive proxy on Form 14A, again containing the same incomplete and misleading statements regarding the requirements and risks associated with listing new shares on the NYSE MKT exchange as the July 8, 2016 Preliminary Proxy.

28.    Also on August 15, 2016, MGT filed with the SEC on Form 10-Q its quarterly financial report for the quarter ended June 30, 2016 stating that the Company had "no additional risk factors other than those disclosed in our Annual Report Form 10-K filled April 14, 2016," which omitted any disclosure relating to the requirements and risks associated with listing new shares on the NYSE. Nor did MGT's August 15, 2016 Form 10-Q disclose any formal or informal inquiry by the SEC.

29.    The Company's August 14, 2016, Form 10-Q contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by Defendant Ladd, who certified the following in his capacity as both CEO and CFO of MGT:

1.    I have reviewed this Quarterly Report on Form 10–Q of MGT Capital Investments, Inc.;

7

2.      Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a–15(f) and 15d–15(f)) for the registrant and have:

        (a)      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

        (b)      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

        (c)      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

        (d)      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the Audit Committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

30.    On September 19, 2016, the shareholders of MGT voted to approve the acquisition of D-Vasive, as well as the issuance of 43.8 million shares of stock, in accordance with the Asset Purchase Agreements to acquire D-Vasive and Demonsaw, dated May 9, 2016, and May 26, 2016, respectively.

31.    The statements set forth herein were materially false and misleading when made as Defendants omitted to disclose material facts concerning the risk of non-approval of the listing of its shares with the NYSE.  In particular, Defendants failed to disclose that it was issuing unregistered shares to complete its transactions and there is a substantial likelihood that the NYSE would not approve the listing of unregistered shares.

***The Truth Begins To Emerge***

32.    On September 19, 2016, MGT issued a press release entitled "MGT Receives Subpoena From Securities and Exchange Commission. No Indication That the Company is the Subject of Any Enforcement Proceedings." The Company filed the same press release on Form 8-K with the SEC. Therein, the Company stated:

MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that on September 15, 2016, it received a subpoena from the Securities and Exchange Commission requesting certain

9

information from the Company. MGT has no indication or reason to believe that the Company is or will be the subject of any enforcement proceedings. The Company is fully cooperating to comply with the SEC's request.

33.     On this news, MGT's shares plummeted $.80, more than 24.5% to close at $2.46 on September 19, 2016.

34.     The next morning, on September 20, 2016, MGT issued a press release entitled "MGT Provides Update on Status of D-Vasive Acquisition," stating that:

> MGT Capital Investments, Inc. (NYSE MKT: MGT) announced today that the New York Stock Exchange informed the Company late yesterday afternoon that it will not approve the listing on the Exchange of the 43.8 million shares that the Company is required to issue in order to complete the closing of the D-Vassive merger. The Company and John McAfee remain committed to closing the transaction and are exploring alternatives.

> Mr. McAfee stated, "We are determined to consummate a transaction that brings our cybersecurity technologies to market in order to solve the pressing privacy and security issues that society faces."

35.     That day, MGT shares fell another $.63, more than 25%, to close at $1.89 on September 20, 2016.

36.     At no point prior to September 19, 2016, did MGT inform its shareholders that it or any of its officers or directors may be under formal or informal inquiry by the SEC. Similarly, the Company never fully informed shareholders of the risks of the NYSE failing to register the shares of stock required to complete the Acquisitions.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class of all persons and entities who purchased or otherwise acquired MGT securities between May 9, 2016 and September 20, 2016, inclusive.

Excluded from the Class are MGT and its officers and directors, as well as their families and affiliates.

38.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

39.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

       a.   Whether Defendants violated the Exchange Act;

       b.   Whether Defendants omitted and/or misrepresented material facts;

       c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

       d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

       e.   Whether the price of MGT stock was artificially inflated; and

       f.   The extent of damage sustained by Class members and the appropriate measure of damages.

40.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained identical damages from Defendants' wrongful conduct alleged herein.

41.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

42.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### FRAUD ON THE MARKET

43.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a.   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.   The omissions and misrepresentations were material;

    c.   The Company's common stock traded in efficient markets;

    d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

    e.   Plaintiff and other members of the Class purchased MGT securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

44.     At all relevant times, the markets for MGT common stock were efficient for the following reasons, among others:  (i) MGT filed periodic public reports with the SEC; and (ii) MGT regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire serves and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of MGT securities, which reflected all information in the market, including the misstatements by Defendants.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not forward-looking statements.

46.     To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

## LOSS CAUSATION

47.     On September 19, 2016, MGT disclosed that "on September 15, 2016, it received a subpoena from the Securities and Exchange Commission requesting certain information from the Company." On this news, MGT's shares plummeted $.80, more than 24.5% to close at $2.46 on September 19, 2016. This decline is directly attributable to the September 19, 2016 corrective disclosure.

48.     On September 20, 2016, MGT disclosed that "New York Stock Exchange informed the Company late yesterday afternoon that it will not approve the listing on the Exchange of the 43.8 million shares that the Company is required to issue in order to complete the closing of the D-Vassive merger." MGT shares fell another $.63, more than 25%, to close at $1.89 on September 20, 2016. This decline is directly attributable to the September 20, 2016 corrective disclosure.

## CAUSES OF ACTION

### COUNT I
### Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against both Defendants)

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants singly and in concert, directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and course of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and the other members of the Class.   The purpose and effect of said scheme, plan and unlawful course of conduct was, among other things, to induce Plaintiff and the other members of the Class to purchase the Company's securities during the Class Period at artificially inflated prices.

51.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that it (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired MGT securities during the Class Period.

52.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MGT common stock. Plaintiff and the Class would not have purchased MGT stock at the price paid, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## COUNT II
### Violation of § 20(a) of the Exchange Act
### (Against Robert B. Ladd)

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     Ladd acted as a controlling person of MGT within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of his high-level position at the Company, Ladd had the power and authority to cause or prevent MGT from engaging in the wrongful conduct complained of herein. Ladd signed and/or was provided with or had unlimited access to the statements alleged by Plaintiffs to be misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of these materials or to cause them to be corrected so as not to be misleading.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

55.     Determining that this action is a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

56.     Awarding compensatory and punitive damages in favor of Plaintiff and the other Class members against Defendants, for all damages sustained as a result of Defendants' wrongdoing, in an amount proven at trial, including pre-judgment and post-judgment interest thereon.

57.     Awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

58.     Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: September 21, 2016                    Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN
    HERZ LLP**


By: ____s/ Gregory M. Nespole_____
        Gregory Mark Nespole
        Kate M. McGuire
        270 Madison Avenue
        New York, NY 10016
        (t) (212) 545-4600
        (f) (212) 686-0114
        Nespole@whafh.com


**BLOCK & LEVITON LLP**
Jeffrey C. Block
Steven P. Harte
Bradley J. Vettraino
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(t) (617) 398-5600
(f) (617) 507-6020

*Attorneys for Plaintiff*


*789386*

## PLAINTIFF'S CERTIFICATION OF SECURITIES
## FRAUD CLASS ACTION COMPLAINT

I, **John Exley**, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.  I have reviewed, and authorize the filling on my behalf of, the draft complaint against MGT Capital Investments, Inc.
2.  I did not purchase the securities which are the subject of the complaint at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.
3.  My transactions in the Company's securities during the Class Period are as follows:

| Date | Transaction | No. of shares | Price per share |
|------|-------------|---------------|-----------------|
| 05/09/2016 | Buy | 200 | $.65 |
| 05/17/2016 | Buy | 100 | $3.49 |
| 05/17/2016 | Buy | 50 | $3.53 |
| 05/18/2016 | Buy | 25 | $5.51 |
| 05/23/2016 | Buy | 50 | $3.45 |
| 08/11/2016 | Buy | 100 | $3.13 |
| 05/17/2016 | Sell | 100 | $1.77 |
| 05/18/2016 | Sell | 100 | $1.27 |
| 05/20/2016 | Sell | 75 | $4.69 |
| 07/22/2016 | Sell | 50 | $3.54 |
| 07/20/2016 | Sell | 100 | $3.50 |
| 09/20/2016 | Sell | 100 | $1.92 |

4.  I am willing to serve as a representative party on behalf of the class in this action, including providing testimony at deposition and trial, if necessary.
5.  During the three-year period preceding the date of my signing this Certification, I have never sought to be appointed nor have I ever been appointed as lead plaintiff or class representative in any class action arising under the securities laws of the United States.
6.  I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any possible recovery, except for an award, as ordered or

approved by the court, for reasonable costs and expenses (including lost wages) directly relating to my representation of the Class.

Signed under the penalties of perjury on **09/20/2016**.

Signature: