UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MGT CAPITAL INVESTMENTS, INC. SECURITIES LITIGATION | No. 1:16-cv-07415 (NRB) |
| | **ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

1177 AVENUE OF THE AMERICAS NEW YORK, NEW YORK 10036

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

POINT I PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE OMISSIONS ..... 2

A. Plaintiffs Fail to Distinguish this Case from the Settled Rule that Negative Characterizations of Disclosed Facts Are Not Required ..... 2

1. Plaintiffs Do Not Dispute that MGT Disclosed All Material Underlying Facts ..... 2

2. Plaintiffs Do Not Dispute that MGT Was Not Required to Make Negative Characterizations of these Facts ..... 3

3. Negative Characterizations of MGT's Status under NYSE MKT Guidelines Were Not Required under Settled Law ..... 4

B. Plaintiffs Fail to Distinguish This Case from the Settled Rule that Negative Predictions Are Not Required ..... 7

1. Plaintiffs Do Not Dispute that MGT Explicitly Disclosed the Risks Concerning NYSE MKT Delisting ..... 7

2. Plaintiffs Do Not Dispute that MGT Was Not Required to Make Negative Predictions about Those Risks ..... 7

3. Predictions about what NYSE MKT Was "Likely" or "Unlikely" to Do Were Not Required under Settled Law ..... 8

POINT II PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM ..... 9

A. Plaintiffs Do Not Plead a Primary Violation ..... 9

B. Plaintiffs Do Not Properly Plead that Mr. McAfee Controlled MGT ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acito v. IMCERA Grp.*,
47 F.3d 47 (2d Cir. 1995) ....................3 n.2

*Acme Missiles & Contr. Corp.*,
43 S.E.C. 485 (Sept. 19, 1967) ....................5

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)....................3 n.2

*In re CRM Holdings, Ltd.*,
No. 10 Civ. 975 (RPP), 2012 U.S. Dist. LEXIS 66034 (S.D.N.Y May 10, 2012) ....................5, 6

*Data Probe Acquisition Corp. v. Datatab, Inc.*,
722 F.2d 1 (2d Cir. 1983) ....................3 n.2

*Davidoff v. Farina*,
No. 04 Civ. 7617 (NRB), 2005 U.S. Dist. LEXIS 17638 (S.D.N.Y. Aug. 22, 1990) ....................6

*DeMaria v. Andersen,*,
318 F.3d 170, 182 (2d Cir. 2003)....................10 n.6

*Harrison v. Rubenstein*,
No. 02 Civ. 9356 (DAB), 2007 U.S. Dist. LEXIS 13118 (S.D.N.Y. Feb. 23, 2007) ....................3 n.2

*Klamberg v. Roth*,
473 F. Supp. 544 (S.D.N.Y. 1979)....................3 n.2

*Kramer v. Time Warner, Inc.*,
No. 89 Civ. 8234 (LBS), 1990 U.S. Dist. LEXIS 14171 (S.D.N.Y. Oct. 24, 1990), *aff'd*, 937 F.2d 767 (2d Cir. 1991)....................6

*In re Merrill Lynch Research Reports Sec. Litig.*,
273 F. Supp. 2d 351, 392 (S.D.N.Y. 2003)....................10 n.6

*In re Open Joint Stock Co. "Vimpel-Communications" Sec. Litig.*,
No. 04 Civ. 9742 (NRB), 2006 U.S. Dist. LEXIS 10256 (S.D.N.Y. Mar. 14, 2006) ....................8

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd*, 816 F.3d 199 (2d Cir. 2016) ....................3 n.2

*In re Sina Corp. Sec. Litig.*,
No. 05 Civ. 2154 (NRB), 2006 U.S. Dist. LEXIS 71089 (S.D.N.Y. Sept. 26, 2006) ....................8

*Singh v. Schikan*,
106 F. Supp. 3d 439 (S.D.N.Y. 2015)....................3 n.2

**<u>Other Authorities</u>**

NYSE MKT Company Guide, available at
http://wallstreet.cch.com/american/CompanyGuide/....................4, 6 n.4, 8

## PRELIMINARY STATEMENT[1]

Plaintiffs spend most of their opposition responding to arguments Defendants never made. Defendants do not currently seek dismissal based on: lack of materiality (Pl. Br. at 16-18); the PSLRA's safe harbor for forward-looking statements (*id.* at 18-20); the public availability of NYSE MKT's standards (*id.* at 20-22); the failure to plead scienter (*id.* at 22-23); or the failure to plead loss causation (*id.* at 24). Rather, Defendants' Motion is based on the Plaintiffs' failure to allege actionable omissions:

- MGT fully disclosed all material *facts* concerning its operations, but was not required, as Plaintiffs allege in their Complaint, to apply the NYSE MKT's subjective and discretionary guidelines to itself and reach the negative conclusion that it was no longer an "operating company" and hence should be delisted.
- Similarly, MGT fully disclosed the *risks* that NYSE MKT might not permit the proposed acquisitions to go forward and might even delist its stock, but was not required, as Plaintiffs allege in their Complaint, to negatively predict that NYSE MKT, exercising its broad discretion in applying its internal guidelines, was "unlikely" to permit the acquisitions or was "likely" to delist the stock.

In their opposition, Plaintiffs do not, and cannot, dispute that MGT fully and repeatedly disclosed all of these underlying facts and risks. Instead, they briefly try to distinguish this case from the many cases holding that negative characterizations and dire predictions are not required by the securities laws. Those attempts (in two footnotes) to distinguish this case from settled case law fail. This action should be dismissed with prejudice.[2]

---

[1] Terms defined in Defendants' moving brief are not redefined here. References to "Mov. Br." are to Defendants' moving brief in support of their Motion to Dismiss dated August 29, 2017. References to "Pl. Br." are to Plaintiffs' opposition brief dated October 13, 2017.

[2] Plaintiffs contend that by moving to dismiss based on lack of omissions Defendants have thereby "waived their right to challenge the other elements of 10(b)," citing Fed. R. Civ. P. 12(g). (Pl. Br. 11 n.6). That is incorrect. Rule 12(g) merely imposes certain limits on additional Rule 12 dismissal motions, but in the event this Motion is denied, Defendants retain the right to assert other defenses, including Section 10(b) defenses, if justified, at later stages of this proceeding.

# ARGUMENT

## Point I

## PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE OMISSIONS

### A. Plaintiffs Fail to Distinguish this Case from the Settled Rule that Negative Characterizations of Disclosed Facts Are Not Required

#### 1. Plaintiffs Do Not Dispute that MGT Disclosed All Material Underlying Facts

Plaintiffs do not dispute Defendants' showing (Mov. Br. at 4-7, 14-15, citing Ex. 4 at 1, 2, 9, 18) that MGT's public filings, including its 2015 Form 10-K filed weeks before the Class Period, made extensive disclosures about MGT's minimal operations, its negative cash flow from operations, its recent sale of Draftday.com, and its plans to shift into a new area, cybersecurity, through two planned acquisitions. Nor do Plaintiffs dispute that MGT disclosed that its potential acquisitions were entirely subject to NYSE MKT's approval. (Mov. Br. at 7-8, citing Ex. 6 at § 1.01 and Ex. 10.1 § 3.2(a)(ii); Ex. 7 at § 1.01 and Ex. 10.1 § 3.2(a)(ii); Ex. 10 at 18, 28; Ex. 11 at 19, 30; Ex. 12 at 19; Ex. 18). Plaintiffs do not identify any relevant *facts* about MGT's business or operations (as opposed to *characterizations* of MGT) that MGT did not disclose.

It is uncontested that MGT disclosed all the underlying facts upon which Plaintiffs now rely in retroactively reaching their negative conclusion that MGT supposedly was not an "operating company" during the Class Period. For example, Plaintiffs point to the fact that MGT "admitted in its 2016 10-K" (filed in April 2017) that it disposed of substantially all of its equity interest in its principal gaming property, Draftday.com, in September 2015 (Pl. Br. at 3), but MGT actually disclosed that sale well before then, including in its 2015 Form 10-K issued in April 2016. (*See* Ex. 4 at 1, 13; Ex. 5 at § 1.01 and Ex. 99.1). Indeed, MGT disclosed then that it "sold the business in September 2015" and that "[a]s a result of the transaction, the

Company has presented DraftDay.com as a discontinued operation." (Ex. 4 at 1, 13, 16). The other facts Plaintiffs cite to support the conclusion that MGT "had ceased to be an operating company" by "the end of 2015" – namely, that MGT "had minimal assets [and] only $398,000 in cash," it had "no CFO and only two employees," that it "had negative $2.4 million in cash flows from operations in 2015" and that "almost all of its revenue from continuing operations in 2015 came from a 'non-recurring gaming patent licensing fee'" (Pl. Br. at 3) – were all fully disclosed by MGT in its 2015 Form 10-K (*see id.* at 1-2, 16, 18, F-2, F-3).

### 2. Plaintiffs Do Not Dispute that MGT Was Not Required to Make Negative Characterizations of these Facts

Defendants' moving brief demonstrated that the securities laws do not require a company to draw negative inferences or conclusions from disclosed facts or to characterize itself negatively to the public. (Mov. Br. at 15-19, citing multiple cases). Plaintiffs do not dispute this settled point of law. Indeed, Plaintiffs do not mention, let alone question, most of the cases cited by Defendants holding that, as long as the material facts are disclosed, a public company has no duty to direct accusations at itself, characterize its behavior in a negative manner, or verbalize adverse inferences.[3]

---

[3] For example, Plaintiffs ignore: *Harrison v. Rubenstein*, No. 02 Civ. 9356 (DAB), 2007 U.S. Dist. LEXIS 13118, at *38 (S.D.N.Y. Feb. 23, 2007) (defendant was "under no duty 'to direct conclusory accusations at itself or to characterize its behavior in a pejorative manner' in its public disclosures") (Mov. Br. at 15); *Klamberg v. Roth*, 473 F. Supp. 544, 551 (S.D.N.Y. 1979) ("[S]o long as material facts are disclosed or already known, it is not deceptive to fail to 'characterize' those facts with 'pejorative nouns and adjectives,' or to fail to verbalize all adverse inferences expressly.") (Mov. Br. at 15); *Singh v. Schikan*, 106 F. Supp. 3d 439, 447, 448 (S.D.N.Y. 2015) (Buchwald, J.) (dismissing securities fraud claims against defendants who allegedly failed to characterize an ongoing clinical drug trial in a negative way, because the plaintiffs were demanding "an extra level of disclosure spelling out inferences and drawing conclusions for investors," and "the law is clear that companies ***need not depict facts in a negative or pejorative light or draw negative inferences*** to have made adequate disclosures.") (emphasis added) (Mov. Br. at 15-16); *Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 5-6 (2d Cir. 1983) (Mov. Br. at 16); *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (Mov. Br. at 16-17); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 542 (S.D.N.Y. 2015), *aff'd*, 816 F.3d 199 (2d Cir. 2016) (Mov. Br. at 18); and *Acito v. IMCERA Grp.*, 47 F.3d 47, 50, 52-53 (2d Cir. 1995) (Mov. Br. at 18).

### 3. Negative Characterizations of MGT's Status under NYSE MKT Guidelines Were Not Required under Settled Law

Having conceded that MGT disclosed the underlying facts about its operations and new businesses, and that MGT had no legal duty to draw negative conclusions or inferences, Plaintiffs nonetheless argue that MGT had a duty to state that it "was never an operating company during the Class Period" because, according to Plaintiffs, whether or not MGT would be deemed an "operating company" under NYSE MKT's guidelines "was a *fact*" rather than a "characterization" or "conclusion" reached after analysis. (Pl. Br. at 13, emphasis in original). Plaintiffs are wrong.

Plaintiffs' central contention that MGT supposedly never met NYSE MKT's "operating company" standard during the Class Period, and that this "was a *fact*" rather than a "characterization" or "conclusion," is contradicted by that very standard. The NYSE MKT Company Guide expressly states that "operating company" status is a matter of *opinion*: The NYSE will consider suspension or delisting when "in the *opinion* of the Exchange . . . the issuer . . . has ceased to be an operating company." (Ex. 17 § 1002, emphasis added).

Further, the various components of the Guide's "operating company" guideline clearly demonstrate its subjectivity: "Where the issuer has *substantially discontinued* the business that it conducted at the time it was listed or admitted to trading, and has become engaged in ventures or promotions which have *not developed to a commercial stage* or the success of which is *problematical*, it shall not be considered an operating company for the purposes of continued trading and listing on the Exchange." (*Id.* § 1003(c)(i), emphasis added). How much of a change in business will NYSE MKT consider to be a "substantial discontinuation of the prior business"? When will NYSE MKT consider a business venture to have "developed to a commercial stage"? What factors might make its success "problematical"

according to NYSE MKT? The answers depend on what NYSE MKT, in its broad discretion, concludes at any given time in any particular context. The process is the very definition of a subjective analysis and hence an *opinion*, not an objective "fact."

It is undisputed that until October 2016, NYSE MKT *itself* did not reach an "opinion" that its "operating company" guidelines were not being met by MGT. Plaintiffs not only seek to impose their negative analysis in place of NYSE MKT's as to that exchange's own guidelines, Plaintiffs go even further and claim that MGT should have reached that negative conclusion at a time when the exchange itself had not even done so! The securities laws do not require and never have required such as absurd result.

The only authority Plaintiffs' brief cites on this point (at 15-16), *Acme Missiles & Contr. Corp.*, 43 S.E.C. 485 (Sept. 19, 1967), actually confirms that whether an "operating company" standard is met is the *conclusion* of a regulator's analysis, not a "fact." In *Acme Missiles,* the American Stock Exchange sought to delist an issuer's stock because it was no longer an operating company under the AmEx's standard. The judge found that "the Exchange was warranted in *reaching this conclusion*" and "the Exchange was justified *in concluding* that Acme has ceased to be an operating company." *Id*. at 487 (emphasis added).[4]

In a footnote (Pl. Br. at 15-16 n.9), Plaintiffs try but fail to distinguish the facts and holdings of three of the cases cited and relied upon by Defendants:

- The court in *In re CRM Holdings, Ltd.*, No. 10 Civ. 975 (RPP), 2012 U.S. Dist. LEXIS 66034, at *12, *82, *84 (S.D.N.Y May 10, 2012), held that there was no duty to state that a trust was supposedly "underfunded" because the Workers'

---

4 Plaintiffs contend (at 14) that merely because MGT discontinued its gaming business in 2015, it "thus" ceased to be an operating company – ignoring that NYSE MKT's standard also requires an examination of the issuer's new ventures, and looks to whether or not the issuer's new ventures are at a "commercial stage" and whether their success is "problematical." (Ex. 17 § 1003(c)). Thus, contrary to Plaintiffs' assertions (Pl. Br. at 14-16), MGT's statements that its new cybersecurity ventures were "in the initial stages of commercialization" or "only recently begun" do not qualify as acknowledgements that MGT fails to meet the NYSE MKT standard.

Compensation Board had not yet reached that conclusion. Plaintiffs claim this holding is "inapposite" to the MGT case because in *CRM*, "the term 'underfunded' describes a specific determination" by the regulator using "its own regulatory criteria." (Pl. Br. at 15 n. 9). But that exact same scenario applies here: During the Class Period, MGT had no duty to state that it was supposedly not an "operating company" because the NYSE MKT had not made "a specific determination" using "its own regulatory criteria" that MGT was no longer an operating company. NYSE MKT did not do so until October 2016, at which point it was promptly disclosed by MGT.[5]

- This Court in *Davidoff v. Farina*, No. 04 Civ. 7617 (NRB), 2005 U.S. Dist. LEXIS 17638, at *34-36 (S.D.N.Y. Aug. 22, 1990) (Buchwald, J.), dismissed a § 10(b) claim which alleged that the defendant failed to disclose that its business plan was "undercapitalized." The Court did so because "all of the operative facts" – including capital requirements, capital expenditures, scheduled depletion of IPO proceeds and need for more debt financing – "were fully disclosed." Plaintiffs try to rewrite the rationale for this Court's holding, claiming the case was actually dismissed because the Court found that the alleged undercapitalization "was simply not true" as a factual matter. (Pl. Br. at 15 n.9). But as the *Davidoff* opinion makes clear, it relied primarily on the full disclosure of the operative underlying facts in holding the disclosure claim was "not tenable." *Davidoff*, 2005 U.S. Dist. LEXIS 17638, at *35-36.

- Finally, in *Kramer v. Time Warner, Inc*., No. 89 Civ. 8234 (LBS), 1990 U.S. Dist. LEXIS 14171, at *10 (S.D.N.Y. Oct. 24, 1990), *aff'd*, 937 F.2d 767 (2d Cir. 1991), the court dismissed a § 14 claim, finding the defendants had no duty to disclose that proposed alterations to an equity plan were potentially unauthorized, reasoning that "[s]o long as a corporation makes 'disclosure of material objective factual matters,' it need not characterize or editorialize on those facts in any particular way." Plaintiffs seek to distinguish this holding because the plaintiffs in *Kramer* happened to have an alternative state law remedy if the plan was illegal. (Pl. Br. at 15-16 n.9). While it is true that the Second Circuit commented in *dicta* that the plaintiff in *Kramer* could use the company's disclosures to bring a state law claim challenging the equity plan's legality, that was clearly not the basis for the dismissal, which was the company's full disclosure of the underlying facts.

Not surprisingly, Plaintiffs cite no authority supporting their argument that whether MGT was an "operating company" in NYSE MKT's opinion (or any comparable conclusion) is the type of

---

[5] *See* Ex. 15 ("the staff of NYSE Regulation has *determined* to commence proceedings to delist the Company's common stock" under "Section 1002(c) of the NYSE MKT LLC Company Guide") (emphasis added); Ex. 17 § 1002(c) (authorizing delisting in NYSE's "*discretion*" and if issuer has ceased to be an operating company "in the *opinion* of the Exchange") (emphasis added).

"fact" that the securities laws require a company to disclose. Beyond trying, and failing, to distinguish three of Defendants' long list of cases, no case is cited by Plaintiffs where a court required a negative characterization or conclusion to be disclosed.

### B. Plaintiffs Fail to Distinguish This Case from the Settled Rule that Negative Predictions Are Not Required

#### 1. Plaintiffs Do Not Dispute that MGT Explicitly Disclosed the Risks Concerning NYSE MKT Delisting

As was detailed in Defendants' moving brief (at 5, 7-8, 19-20), MGT expressly disclosed *both*: (a) the risk that NYSE MKT might not approve issuing the shares needed for MGT's proposed acquisitions; and (b) the risk that NYSE MKT might delist its shares. Plaintiffs do not dispute that MGT repeatedly disclosed both risks, even before the Class Period. Indeed, Plaintiffs acknowledge on the first page of their brief that "Defendants themselves raised the delisting issue in SEC filings." (Pl. Br. at 1).

#### 2. Plaintiffs Do Not Dispute that MGT Was Not Required to Make Negative Predictions about Those Risks

Plaintiffs' allegations that MGT should have disclosed that NYSE MKT was "unlikely" to list the shares needed to close the D-Vasive and Demonsaw acquisitions and was "likely" to delist MGT boil down to a claim that MGT should have accurately predicted the Exchange's negative decisions and disclosed those negative predictions in advance. As shown in Defendants' moving brief (at 20-23), the securities laws do not require companies to anticipate or predict discretionary decisions by regulators. Indeed, Defendants demonstrated that the law does not even require companies to disclose active investigations because the outcome cannot be predicted. (Mov. Br. at 22 n.9). Plaintiffs nowhere dispute these legal points.

### 3. Predictions about what NYSE MKT Was "Likely" or "Unlikely" to Do Were Not Required under Settled Law

Plaintiffs' sole response to MGT's argument is to try, again in a footnote (Pl. Br. at 14 n.8), to distinguish from this case two of the cases cited by MGT – both decisions by this Court – which held that companies need not predict negative outcomes and disclose such negative predictions. Plaintiffs' attempts to distinguish this Court's two prior rulings fail:

- In *In re Open Joint Stock Co. "Vimpel-Communications" Sec. Litig.*, No. 04 Civ. 9742 (NRB), 2006 U.S. Dist. LEXIS 10256 (S.D.N.Y. Mar. 14, 2006) (Buchwald, J.), this Court dismissed Section 10(b) claims that were based on the defendant's failure to disclose that it would owe back taxes. *Id.* at *20. The Court held that was "a quintessential case of impermissibly pleading 'fraud by hindsight'" because the defendants could not possibly have "known" the ultimate outcome concerning back taxes until it was announced by the relevant decision-making tax authority. This Court noted that the plaintiffs in *Vimpel* did "not suggest how VimpelCom could have known that it would owe 'back taxes' related to VAT offsets before it received the preliminary act from Russian tax officials." *Id.* Plaintiffs contend that *Vimpel* is "inapposite" here because, unlike VimpelCom, MGT "knew or should have known" what the NYSE would ultimately decide many months later concerning its listing status "simply" by consulting the language of the NYSE MKT Company Guide. (Pl. Br. at 14 n.8). That assertion is belied, however, by the discretionary and subjective nature of the analysis, as explained in MGT's moving papers (Mov. Br. at 10-11) and herein.

- In *In re Sina Corp. Sec. Litig.*, No. 05 Civ. 2154 (NRB), 2006 U.S. Dist. LEXIS 71089 (S.D.N.Y. Sept. 26, 2006) (Buchwald, J.), this Court dismissed securities fraud claims against a company for failing to disclose the adverse effects that would result if the Chinese government were to impose certain regulatory changes on the company's fortune-telling business. This Court characterized such claims as essentially arguing that the defendants "should have anticipated the actions of the Chinese government" and that this amounted to "a transparent attempt to plead fraud by hindsight." *Id.* at *27-28. Plaintiffs contend (at 14 n.8) that *Sina* too is "inapposite" here because Sina Corp. could not have "foreseen the eventual crackdown [by the Chinese government] on SINA's advertising" while MGT, on the other hand, supposedly "knew or should have known that they were in noncompliance with the definition of 'operating company' in the NYSE Company Guide" and because, in Plaintiffs' view, "the fact that MGT was not an 'operating company'" was "plainly evident" to MGT. But again, the broad discretion given to NYSE MKT in the Company Guide negates on its face Plaintiffs' attempt to characterize NYSE's ultimate decision as either "plainly evident" or "a fact."

In short, Plaintiffs do not dispute that the securities laws do not require making negative predictions and do not show that the specific disclosures they demand – that NYSE MKT was "unlikely" to list the shares needed for the acquisitions and was "likely" to delist MGT – would be anything other than negative predictions.[6]

**Point II**

**PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM**

Defendants' moving brief explained (at 23-25) that Count II fails to plead a § 20(a) claim against Messrs. Ladd and McAfee because it fails to plead a primary violation by the controlled person, control of the primary violator by the defendant, and that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.

**A. Plaintiffs Do Not Plead a Primary Violation**

For the reasons stated above and in Defendants' moving brief, Plaintiffs fail to allege a primary violation, and the Court should dismiss their § 20(a) claim for this reason.

**B. Plaintiffs Do Not Properly Plead that Mr. McAfee Controlled MGT**

Defendants' moving brief showed (at 24-25) that to plead control, Plaintiffs must establish that "the defendant possessed the power to direct or cause the direction of the management and policies" of the primary violator, including "actual control over the transaction in question." Plaintiffs cannot meet this standard as to Mr. McAfee, because they acknowledge he did not become an MGT officer until *after* the Class Period. (AC ¶¶ 1, 16).

Plaintiffs do not dispute this legal standard. They respond (at 25) only by pointing to two allegations: (a) the "proposed appointment" of McAfee was announced at the

[6] Defendants' moving brief showed (at 23 n.10) that the Court should dismiss Count I against defendant McAfee for the additional reason that he did not authorize, make or sign any of the alleged misleading statements, as Plaintiffs admit he did not become an MGT officer until after the Class Period ended (AC ¶¶ 1, 16) and do not allege he signed any of the allegedly misleading statements. Plaintiffs do not address this dismissal argument as to Mr. McAfee, and thus concede it.

start of the Class Period, at the same time as MGT's announcement that it would change its name to John McAfee Global Technologies, Inc. (AC ¶ 46); and (b) McAfee assured stockholders that he would not be just a figurehead, stating on May 26, 2016 his future intentions that "MGT will be the vehicle I use to create wealth for all stockholders" (AC ¶ 56). But neither allegation contradicts Plaintiffs' acknowledgement that Mr. McAfee did not become an MGT officer until *after* the Class Period ended. Plaintiffs point to no authority supporting control person liability by a future officer.

**CONCLUSION**

For the foregoing reasons as well as those in Defendants' moving brief, the Court should dismiss the Plaintiffs' Amended Complaint with prejudice and without leave to amend.[7]

Dated: New York, New York
November 3, 2017

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ John P. Coffey

John P. Coffey (JPC-3832)
Jeffrey W. Davis (JWD-7170)
Karen S. Kennedy (KSK-0357)
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
scoffey@kramerlevin.com

*Attorneys for Defendants MGT Capital Investments, Inc., Robert Ladd and John McAfee*

---

7 Any request for leave to amend should be denied because Plaintiffs have "failed to state a claim upon which relief could be granted" and "amendment of the complaint [will be] futile." *DeMaria v. Andersen*, 318 F.3d 170, 182 (2d Cir. 2003) (denying leave to amend). In particular, Plaintiffs filed the Amended Class Action Complaint nine months after this action was initially filed, and "they have given the Court no indication that they can amend their complaint to plead legally sufficient claims." *In re Merrill Lynch Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 392 (S.D.N.Y. 2003) (denying leave to amend where plaintiffs "merely indicated in their opposition brief that they could amend their complaints").